UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| CYNTHIA CURRAN, ADMINISTRATOR OF THE ESTATE OF CARA BETH SALSGIVER, | ) ) ) ) 1:23-CV-00019-RAL |
| Plaintiff | ) ) RICHARD A. LANZILLO ) CHIEF UNITED STATES MAGISTRATE |
| vs. | ) JUDGE ) |
| VENANGO COUNTY, et al., | ) MEMORANDUM OPINION ON MOTION ) TO DISMISS OF DEFENDANTS MAXIM |
| Defendants | ) AND TROWBRIDGE ) ) IN RE: ECF NO. 95 ) |

Plaintiff Cynthia Curran ("Curran"), as administrator of the estate of her late daughter, Cara Beth Salsgiver ("Cara"), has filed a Second Amended Complaint ("SAC) against Defendants, Maxim Healthcare Staffing ("Maxim"), UPMC Community Medicine, Inc. ("UPMC"), Angela Trowbridge ("Trowbridge"), Reagan Snyder, Dr. R. Kreider, and a "John Doe Corrections Officer." ECF No. 88. The SAC asserts federal constitutional claims under 42 U.S.C. § 1983 and Pennsylvania state law claims, all of which arise out of Cara's death while she was detained at the Venango County Prison ("VCP"). *See id.* Defendants Maxim and Trowbridge have moved to dismiss the claims of the SAC against them pursuant to Fed. R. Civ. P. 12 (b)(6). *See* ECF Nos. 95 (motion), 96 (brief). The motion will be granted in part and denied in part.[1]

---

[1] All remaining parties have consented to the jurisdiction of a United States Magistrate Judge in this case pursuant to 28 U.S.C. §636(c).

1

I. Relevant Factual Allegations and Claims

Curran alleges that on or about July 18, 2022, "Venango County outsourced the entire medical responsibility of inmates to Defendants UPMC and Maxim to provide health care to all prisoners and pretrial detainees housed in the [VCP]," ECF No. 32, ¶ 14, and that "UPMC and Maxim were responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that all pretrial detainees and prisoners are provided with proper medical and behavioral healthcare while in their custody." *Id.*, ¶ 15. Curran further alleges, based on information and belief, that Maxim employed Trowbridge as a member of the medical staff at the VCP. *Id.*, ¶ 22.

While detained at the VCP, Cara was seen by Trowbridge and Snyder, another member of the medical staff, and presented with extremely swollen legs and an inability to walk, but Trowbridge and Snyder did not provide her with care to address these symptoms. *Id.*, ¶¶ 16-17. Cara's cellmate and other inmates also asked Trowbridge, Snyder, and the John Doe Corrections Officer to attend to Cara's medical needs, but their requests were also ignored. *Id.*, ¶ 16. Cara died on July 18, 2022, while still in the custody of the VCP. *Id.*, ¶ 19. An autopsy determined that Cara died from "severe bilateral pyelonephritis [a severe kidney infection] and acute bronchopneumonia." *Id.*, ¶ 23. Curran attributes Cara's death to UPMC and Maxim's failures "to create, implement, and enforce policies, practices, and procedures to ensure that proper care was provided to [Cara]," their failure "to ensure medical personnel properly examined inmates complaining of physical health complaints while detained at the [VCP]," and their failure "to supervise their employees who treated inmates in the [VCP] properly." *Id.*, ¶¶ 28-30.

Trowbridge is named as a defendant in Count I ("Failure to Protect and Denial of Medical Care" in violation of the Fourteenth and Eighth Amendments), Count V ("Negligence"

under Pennsylvania law), Count VI ("Wrongful Death" under Pennsylvania law), and Count VII ("Survival Action" under Pennsylvania law). Maxim is similarly included as a defendant in Count I and Counts V-VII. Maxim is also named in Count VIII ("Respondeat Superior"), Count IX ("Negligent Hiring"), Count X ("Negligent Retention"), and Count XI ("Negligent Supervision"). Curran expressly disclaims that she is asserting a "medical negligence" claim against Trowbridge or Maxim. *See id.*, ¶ 48.

Maxim and Trowbridge have moved to dismiss all claims against them, although their brief does not include any argument for dismissing the negligence claim against Trowbridge.

II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court accepts as true the factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should be dismissed under Rule 12(b)(6) only if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)). In assessing the legal sufficiency of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's

motion to dismiss if the plaintiff's claims are based on such exhibits. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences suggested by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Cal. Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

III. Discussion and Analysis

    A. The motion to dismiss will be denied as to Count V (negligence) against Trowbridge, Count VIII (respondeat superior) against Maxim, and Count VII (Survival Act) against both Trowbridge and Maxim.

The SAC alleges facts minimally sufficient to support a negligence claim (Count V) against Trowbridge. Under Pennsylvania law, the plaintiff must allege facts to support four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582 (Pa. 2012). The SAC alleges that Cara presented to Trowbridge with symptoms of a serious illness, that Cara and others requested medical attention for Cara's condition, and that Trowbridge failed or refused to provide Cara with any care. These allegations

4

support plausible inferences that Trowbridge, as a member of the VCP medical staff, owed a duty of care to Cara as a detainee at the prison, that her failure to provide any care was a breach of that duty, and that Trowbridge's breach of duty contributed materially to Cara's death. These inferences are enough to sustain Curran's negligence claim at the pleadings stage of this case. Furthermore, because Curran alleges that Trowbridge was an employee of Maxim at the time of events at issue, the SAC also states a state-law claim against Maxim for vicarious or respondeat superior liability (Count VIII). "As a general rule[,] a master is liable for the tortious acts of his servant done in the course of his employment, and within the general scope of his authority." *Lunn v. Boyd*, 403 Pa. 231, 169 A.2d 103, 104 (1961) (internal quotation marks omitted).

Trowbridge and Maxim appear to argue that no claim for "general negligence" exists in the context of the facts here. They point to the SAC's disclaimer of any "medical negligence" claim against them. The Court also is perplexed by this disclaimer and, for pleading purposes, is treating it as a conclusion of law to be disregarded. The adage, "if it looks like a duck, walks like a duck and quacks like a duck, then it's a duck" appears to apply here. Curran's negligence claim against Trowbridge has all the attributes of a medical negligence claim despite Curran's characterization to the contrary. It appears Curran's disclaimer may seek to avoid Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, which generally requires a plaintiff asserting a medical or other professional malpractice claim to file a Certificate of Merit ("COM") for each defendant who is the subject of the claim. *See* 231 Pa. Code Rule 1042.3(a). The COM must attest that there is a reasonable probability that the medical or other professional care described in the complaint fell outside of acceptable professional standards. The Third Circuit has held that Rule 1042.3 is substantive law that applies to professional malpractice claims based on Pennsylvania law asserted in federal court. *See Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011)

(citing *Erie R.R. v. Thompkins*, 304 U.S. 64 (1983)). Thus, for purposes of a motion for summary judgment, Rule 1042.3 is applied as "controlling, substantive state law." *Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508, 509-10 (E.D. Pa. 2004). "[A] plaintiff's failure to comply with Rule 1042.3 requires dismissal of any malpractice claim." *Bennett v. PrimeCare Med., Inc.*, 2018 WL 6072126, at *10 (M.D. Pa. Sept. 14, 2018). Whether a COM is required for any claim against any defendant here, however, is not presently before the Court. Presently, the only issue before the Court is whether the facts alleged in the SAC support the elements of a negligence claim regardless of the label Curran attaches to that claim. Any defendant may contest Curran's characterization of the negligence claim by following the procedure prescribed in Rule 1042.3 and, if appropriate, by moving for summary judgment based on the absence or insufficiency of a COM.

Trowbridge and Curran also note that the SAC is light on details concerning when Trowbridge examined or otherwise encountered Cara and observed her symptoms or when other inmates and Cara asked Trowbridge for medical assistance. While pleading such details is preferred, the SAC alleges sufficient ultimate facts to sustain the claim at this stage of the proceedings. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element...[and] [t]his 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

Given that the negligence claim against Trowbridge and the respondeat superior claim against Maxim survive their motion to dismiss, the state law Survival Act claim on behalf of Cara's estate also survives the motion. Trowbridge and Maxim have raised no independent basis for dismissing this claim.

B. The motion to dismiss will be denied as to Count I (deliberate indifference to medical needs) against Trowbridge but granted as to Maxim.

The SAC alleges sufficient facts to support a claim against Trowbridge under 42 U.S.C. § 1983 for deliberate indifference to Cara's serious medical needs. *See generally, Estelle v. Gamble*, 429 U.S. 97 (1976) (internal quotation omitted). To establish a violation of an inmate or detainee's constitutional right to adequate medical care, the plaintiff must allege facts that demonstrate: (1) she had a serious medical need, and (2) acts or omissions by prison officials that reflect deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists when a "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

The SAC alleges facts to support that Cara had a serious medical need. It also alleges facts that minimally support plausible inferences that Trowbridge was aware of Cara's desperate need for care but turned a blind eye to that need. At the pleading stage of the case, these plausible inferences support a deliberate indifference to serious medical needs claim against Trowbridge.

The same cannot be said for the deliberate indifference claim against Maxim. Unlike Curran's state law negligence claim, liability under 42 U.S.C. § 1983 cannot be based on a theory of vicarious or respondeat superior liability. In *Monell v. Dep't Soc. Servs. of Cty. Of New York*, the United States Supreme Court held that a municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible." 436 U.S. 658, 694 (1978). This same standard applies to private corporations, like Maxim, that provide governmental services—here medical services to inmates and detainees—pursuant to a contract with a municipality. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.4, 583 (3d Cir. 2003) ("*Monell* applies to other private organizations faced with liability under § 1983."). To state a claim against "a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) (citing *Natale*, 318 F.3d at 583–84). In other words, whether the defendant is a governmental entity or a private corporation performing the functions of a governmental body, it may be liable under § 1983 for the constitutional violations committed by its subordinates only when they acted pursuant to its policies, customs, or practices. *See id.* Therefore, Curran may prevail on her § 1983 claim against Maxim only if she establishes that "there was a relevant [Maxim] policy or custom, and that the policy caused the constitutional violation" for which she seeks relief. *See Natale*, 318 F.3d at 583-84.

The SAC fails to allege facts to support these elements. Although Curran alleges that Maxim failed "to create, implement, and enforce policies, practices, and procedures to ensure that proper care was provided to [Cara]," "to ensure medical personnel properly examined inmates complaining of physical health complaints while detained at the [VCP]," and "to supervise their employees who treated inmates in the [VCP] properly," ECF No. 32, ¶¶ 28-30, these and her other policy-related allegations are conclusions of law. Because none of Currans' policy related conclusions of law are supported by factual allegations, her deliberate indifference to medical needs claim against Maxim fails as a matter of law and will be dismissed on this basis. *See*

*McTernan*, 577 F.3d at 531 (holding that requirement that a court accept as true all "allegations contained in a complaint is inapplicable to legal conclusions"); *Twombly*, 550 U.S. at 555 (holding that the court need not accept as true legal conclusions disguised as factual allegations).

    C. The motion to dismiss will be granted as to Count IX ("Negligent Hiring"), Count X ("Negligent Retention"), and Count XI ("Negligent Supervision") against Maxim.

Currans' negligent hiring, negligent retention, and negligent supervision claims against Maxim all suffer from the same defect as her deliberate indifference to medical needs claim. Each is a collection of legal conclusions and labels. None of these legal conclusions is supported by factual allegations. According all three claims will be dismissed.

    D. The motion to dismiss will be granted as to the corporate negligence claim against Maxim at Count V.

As noted, Curran's respondeat superior claim against Maxim survives based on the sufficiency the negligence allegations against Trowbridge and the allegation that she was an employee of Maxim. Curran's direct negligence claim against Maxim at Count V fails based on her failure to allege facts to support it. This claim is in the nature of a corporate negligence claim, which the Pennsylvania Supreme Court recognized an apply to a hospital in *Thompson v. Nason Hosp.*, 591 A.2d 703 (Pa. 1991). The *Thompson* Court defined the doctrine as follows:

> Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed to the patient, which is to ensure the patient's safety and wellbeing at the hospital. This theory of liability creates a non-delegable duty which the hospital owes directly to the patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

*Id*.

Under *Thompson*, a hospital or other similar facility has a duty to use reasonable care in: (1) the maintenance of safe and adequate facilities and equipment, (2) the selection and retention of only competent physicians, (3) oversight of all persons who practice medicine within its walls

as to patient care, and (4) formulation, adoption and enforcement of adequate rules and policies to ensure the quality of care for patients. *Rarrick v. Silbert*, 2005 WL 4904829, 78 Pa. D. & C. 4th 129 (Lackawanna Cty, 2005) (citing *Thompson*, 591 A.2d at 707). To state a corporate negligence claim against medical hospital, a plaintiff must allege facts to support that: (1) the hospital deviated from the standard of care; (2) the hospital had actual or constructive notice of the defect or procedure which created the harm; and (3) that the conduct was a substantial factor in bringing about the harm. *See Brodowski v. Ryave*, 885 A.2d 1045, 1057 (Pa. Super. 2005). The hospital's actual or constructive notice is critical because "the corporate negligence doctrine contemplates a 'kind of systemic negligence' in the actions and procedures of the hospital itself rather than in the individual acts of its employees." *Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042, 1045 (Pa. Super. 2006) (citing *Edwards v. Brandywine Hosp.*, 652 A.2d 1382, 1386 (Pa. Super. 1985)). Like most of the other claims against Maxim, the SAC alleges only conclusions of law without facts to support its corporate negligence claim. This claim also will be dismissed.

      E. The motion to dismiss will be granted as to Count VI (Wrongful Death Act), but Curran will be granted one final opportunity to amend this claim to supply the information required by Pennsylvania Rule of Civil Procedure 2204.

At Count VI, the SAC asserts a claim under Pennsylvania's Wrongful Death Act, 42 Pa. C.S. § 8301. Such claims are subject to the additional pleading requirements of Pennsylvania Rule of Civil Procedure 2204, which provides:

> In addition to all other facts required to be pleaded, the initial pleading of the plaintiff in an action for wrongful death shall state the plaintiff's relationship to the decedent, the plaintiff's right to bring the action, the names and last addresses of all persons entitled by law to recover damages, their relationship to the decedent and that the action was brought in their behalf.

Pa. R. Civ. P. 2204.

The additional pleading requirements of Rule 2204 are not merely procedural but supply substantive prerequisites for standing to be a plaintiff or beneficiary under the Wrongful Death Act. As a result, these requirements apply in federal court. *See Torres v. Brooks Armored Car Serv. Div.*, 1994 WL 143144, at *2 (E.D. Pa. Apr. 12, 1994). The SAC does not allege the names and last addresses of all persons entitled by law to recover damages, their relationship to the decedent, or that the action is brought in their behalf. Count VI will be dismissed for failing to provide this information. As to this claim, however, leave to amend to supply the required information will be granted.

IV. Conclusion

By separate order, the motion to dismiss filed on behalf of Maxim and Trowbridge will be granted in part and denied in part. The motion will be granted as to the following claims:

- Count I (deliberate indifference to medical needs) against Maxim;

- Count V (corporate negligence) against Maxim;

- Count IX (negligent hiring), Count X (negligent retention), and Count XI (negligent Supervision) against Maxim; and

- Count VI (Wrongful Death Act) against Trowbridge and Maxim.

Each of these claims, except Count VI (Wrongful Death Act) is dismissed with prejudice. Curran has been given multiple opportunities to allege facts to support these claims but has repeatedly failed to do so. Thus, another opportunity to amend Counts I, V, IX, X, and XI would be futile and further delay this case to the prejudice of the Defendants. The same cannot be said, however, for Count VI (Wrongful Death Act). The defects in this claim were only recently

identified and amendment to cure them would appear not to be futile or prejudicial to the Defendants.

The motion will be denied as to the following claims:

- Count V (negligence) against Trowbridge;
- Count VIII (respondeat superior) against Maxim; and
- Count VII (Survival Action) against both Trowbridge and Maxim.

DATED this 23rd day of September, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE